Jodie Berger (SBN 124144)
jberger@wclp.org
Richard Rothschild (SBN 67356)
rrothschild@wclp.org
Robert Newman (SBN 86534)
rnewman@wclp.org
Antionette Dozier (SBN 244437)
adozier@wclp.org
**WESTERN CENTER ON LAW & POVERTY**
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
T: (213) 235-2617
F: (213) 487-0242

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
**IMPACT FUND**
2080 Addison St., Suite 5
Berkeley, CA 94704
T: (510) 845-3473
F: 510) 845-3654

*Attorneys For Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKA OKJE ERDMANN-BROWNING and JACQUELINE BENITEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS J. VILSACK, Secretary, United States Department of Agriculture in his official capacity; SHALANDA YOUNG, Director of the United States Office of Management and Budget, in her official capacity.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>CLASS ACTION |

35343472v2

1

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Case No.

# NATURE OF ACTION

1. Plaintiffs, low-income California residents, bring this lawsuit on behalf of themselves and a proposed class of over 40 million recipients of federal food benefits to stop Defendants from cutting off or otherwise interfering with the timely issuance of benefits under the federal government's Supplemental Nutrition Assistance Program ("SNAP") beginning on October 1, 2023. Formerly known as the Food Stamp Program, SNAP is the nation's most important and effective anti-hunger program. Plaintiffs and proposed Class members have been or will be certified to receive SNAP benefits in October 2023 and thereafter. These individuals and their families, the majority of whom live below the federal poverty level, rely on SNAP benefits to meet their basic subsistence and nutritional needs.

2. As of this date, Congress has failed to pass the agriculture appropriations bill for Federal Fiscal Year 2024, which begins on October 1, 2023. Congress and the President are embroiled in a partisan impasse, making a federal government shutdown likely, if not inevitable. In the absence of a new annual agriculture appropriations bill or a continuing resolution, Defendants Thomas J. Vilsack, Secretary of the United States Department of Agriculture, and Shalanda Young, Director of the United States Department of Management and Budget, have failed to take the necessary steps to ensure that SNAP benefits will be issued in October and subsequent months.

3. Defendant Vilsack is violating the Food and Nutrition Act of 2008, 7 U.S.C. § 2011 *et seq.* ("the Act"), which requires USDA to ensure that the states timely issue each month's benefits for ongoing SNAP households. *Id.* § 2020(g). The monthly issuance of SNAP benefits has a several-week lead time.

4. To ensure the timely delivery of benefits, all the states[1] have a determined a date by which they must start the process to issue the upcoming month's SNAP benefits to recipient households. If any state fails to begin the issuance process on that date, benefits to individual households will be delayed. If USDA instructs the states to delay the process to issue October benefits, or leaves unclear how states should respond to the impending governmental shutdown

---

[1] The reference to the "states" includes the 50 states, the District of Columbia, Guam and the Virgin Islands.

35343472v2

2

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Case No.

until dangerously close to the deadline, state SNAP agencies will violate the Food and Nutrition Act, 7 U.S.C. § 2020(e)(2)(B)(i).  That section of the Act requires that the states "shall provide timely, accurate, and fair service to applicants for, and participants in, the supplemental nutrition assistance program."  By inducing states to depart from the Act's requirement to pay benefits timely to eligible households, Secretary Vilsack will cause USDA to violate its obligations under 7 U.S.C. § 2020(g), which requires that the agency ensure that states comply with the Act.  Defendant Vilsack also will cause USDA to violate its own obligations under 7 U.S.C. §§ 2011, 2014(a) authorizing the SNAP program to permit all eligible households who apply to participate to obtain a more nutritious diet.

5.  There is no provision in the Act or regulations that abrogates, abridges or diminishes the legal and equitable obligations of Defendants Vilsack and Young to refrain from interfering with the timely issuance of SNAP benefits to the named Plaintiffs or proposed Class members.

6.  Unless Defendants Vilsack and Young make clear that states should proceed with the normal issuance process for October SNAP benefits, regardless of whether Congress enacts annual appropriations bills or a continuing resolution, Plaintiffs and the proposed Class will be denied SNAP benefits needed to purchase food as early as October 1, 2023.  Even if a continuing resolution is adopted for a few weeks or months, the threat of a shutdown continues.  Unless the USDA makes clear to the states that SNAP benefits shall issue, even absent a Congressional appropriation, the harm to Plaintiffs and the proposed Class will continue.

7.  If not enjoined, Defendants' actions interfering with and failing to carry out their non-discretionary responsibilities to ensure the timely issuance of SNAP benefits will cause irreparable harm to the named Plaintiffs and the proposed Class by depriving them of the financial means to buy food for subsistence.  Named Plaintiffs and the members of the proposed Class are among the neediest and most vulnerable people in the United States.  They should not go hungry because Congress cannot agree on a federal budget when the Food and Nutrition Act contemplates the regular distribution of SNAP benefits regardless of whether annual appropriations bills have been enacted.

//

**JURISDICTION, VENUE, AND RIGHT OF ACTION**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (actions against the United States), and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff Anika Okje Erdmann-Browning resides in the District.

10. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 1361, 2201, and 2202, and by Rules 57 (declaratory relief) and Rule 65 (injunctive relief) of the Federal Rules of Civil Procedure. 5 U.S.C. § 500 *et seq.*, 7 U.S.C. § 700 *et seq.*, and 42 U.S.C. § 1983 confer rights of action to enforce the statutes cited in this complaint.

11. Plaintiffs' action for mandamus is authorized by 28 U.S.C. § 1361.

**PARTIES**

12. Plaintiff Anika Okje Erdmann-Browning is 46 years old. She is a resident of Alameda County, California. She and her husband are eligible for and receive CalFresh benefits as SNAP benefits are known in California.

13. Plaintiff Jaqueline Benitez is 22 years old. She is a resident of Los Angeles in Los Angeles County, California. She is eligible for and receives CalFresh benefits.

14. Defendant Tom Vilsack is the current U.S. Secretary of Agriculture. As Secretary, he is responsible for all actions taken by USDA and ensuring USDA complies with the laws of the United States. 7 U.S.C. § 2013(a). At all times, Defendant has acted under the color of federal law. Secretary Vilsack is sued in his official capacity.

15. Defendant Shalanda Young is the Director of the Office of Management and Budget ("OMB"). She is responsible for administering the OMB. The OMB is a federal office responsible for assisting the President in meeting policy, budget, management, and regulatory objectives. It oversees the performance of federal agencies and administers the federal budget. At all times, Defendant has acted under the color of federal law. Director Young is sued in her official capacity.

//

//

4
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No.

# FACTS

## Impending Government Shutdown

16. Partisan politics, with growing frequency, have brought the government of the United States to a shutdown or the brink of a shutdown. Every time there is a shutdown or threatened shutdown, millions of households face the possibility that their SNAP benefits will be suspended, leaving them without critical food resources. This year is no exception.

17. For agencies and programs whose continued operation depends on annual appropriation acts, Congress and the President must enact interim or full-year appropriations by October 1, the beginning of the federal fiscal year. A failure to do so creates a funding gap, at which point the federal government begins a "shutdown" of affected activities, including the furlough of non-essential personnel and curtailment of agency activities and services. To avoid a government shutdown, Congress may enact short-term measures, known as "continuing resolutions," to keep the government funded for a few days, weeks or months at previous levels until final budgeting decisions are made.

18. As of the filing of this Complaint, several Members of the House of Representatives have stated that they favor a government shutdown on October 1 and Defendant Young has stated publicly that she does not expect Congress to finish work on full-year appropriations by October 1. If Congress does not pass either full-year appropriations bills or a continuing resolution, the federal government will shut down all programs dependent on discretionary appropriations. USDA historically has treated SNAP as if it were such a program.

19. During the 2015 shutdown of the federal government, USDA took the position that it would stop SNAP household access to benefits beyond the available contingency reserve. In 2019, when the Agriculture Appropriations bill had not been enacted, USDA provided benefits consistent with instructions in a continuing resolution during the first full month of a government shutdown, but did not provide for benefit issuances after that. In 2021, USDA issued a contingency plan stating that SNAP operations could continue during a lapse in appropriations based on multi-year carry over funds; contingency reserves; and quarterly apportionment of funds by OMB under the continuing resolution. Thus, historically, USDA has taken the position that, absent an

Case 4:23-cv-04678-JST   Document 1   Filed 09/12/23   Page 6 of 15

appropriations bill, continuing resolution, carry over funding or contingency reserves, SNAP benefits cannot be issued during a government shutdown. Based on this history, Plaintiffs believe that USDA will interrupt SNAP benefits this year.

20. Upon information and belief, based upon the Fiscal Year 2023 appropriations, the SNAP appropriations in the Consolidated Appropriations Act (Pub .L. No. 117-328, December 29, 2022, 136 Stat. 4459) and USDA KeyData reports indicating Fiscal Year 2023 expenditures and likely projected monthly spending based on March-June 2023 SNAP expenditures, sufficient funds remain in the Fiscal Year 2023 appropriations to fund October 2023 benefits obligated in September 2023.

21. Upon information and belief, SNAP appropriations for Federal Fiscal Years 2022 and 2023 contained contingency reserves of $3 billion that will remain available after October 1, 2023.

22. Each month, federally funded SNAP benefits are issued to Electronic Benefits Transfer ("EBT") cards, managed by each state's EBT vendor. California and the other states must transmit an electronic file with the information about each eligible SNAP household's benefit amount to the EBT vendor by a specific deadline so that the EBT vendor can process the data and load individual EBT cards with the next month's SNAP benefits for that household.

23. Once states miss their contractual deadline to send the electronic files to their EBT vendor, and thus release the EBT vendors from any enforceable duty to assure that benefits are made available timely, class members will suffer an irreparable injury.

24. USDA previously noted that several states set the 15th of the months as the deadline by which to transmit the electronic files. The California Department of Social Services, California's SNAP agency, has informed Plaintiffs' counsel that California's deadline to send these files to its EBT vendor to ensure timely benefits issuance is September 15, 2023. Although asked to inform Plaintiffs' counsel whether the state would be transmitting the files timely, the state did not provide that assurance. Rather, the agency stated only that they were working with state and federal partners to mitigate risks resulting from a governmental shutdown.

25. Unless enjoined by September 15, 2023, nearly 5 million Californians will lose the

6
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No.

means to buy food and will go hungry.

26. USDA has previously informed states that if they proceed with the issuances in the absence of an annual appropriations bill, using state funds, they are liable for their actions without any guarantee of federal reimbursement.

27. If Congress fails to pass an annual appropriation bill or a continuing resolution for USDA by mid-September and USDA fails to instruct states to proceed with transmitting the necessary electronic files in order to timely issue October benefits, October SNAP benefits will be delayed or interrupted entirely.

28. Even if a continuing resolution is adopted for some short period, the threat of a shutdown will continue. As long as that threat exists, USDA's position that an annual appropriations bill is required to issue SNAP benefits will continue to harm Plaintiffs and class members.

29. Any disruption of SNAP benefits will cause immediate irreparable harm to low income recipients, many of whom will not have enough money to purchase food. It could also cause disruptions at local supermarkets and state SNAP offices as hungry individuals and families learn they cannot access their benefits, and eventually will impact the 259,000 SNAP approved retailers, ranging from large supermarkets to mom-and-pop neighborhood stores that will experience loss of sales.

30. Many of these individuals and families will turn to food pantries and soup kitchens in California and across the country that are already stretched to capacity. With the end of Pandemic Emergency Allotments as of March 2023, which had significantly increased household benefits, these free food sources have had a huge increase in demand. Many, if not most, agencies cannot absorb additional need. They simply will not have food to meet an additional increase in demand resulting from tens of millions of people simultaneously losing food assistance, and will need to consider drastic alternatives, such as giving everyone significantly less food or turning away hungry individuals and families.

31. Unless Defendants are enjoined, those who lose SNAP benefits will go hungry. There is no adequate remedy at law available that will address these harms.

**Defendants' Planned Action will Cause Immediate Harm to the Plaintiffs**

*Plaintiff Anika Okje Erdmann-Browning*

32. Plaintiff Anika Okje Erdmann-Browning is 46 years old. She and her husband receive $496 in CalFresh benefits each month.

33. Plaintiff Erdmann-Browning has a graduate degree in Industrial Engineering and an undergraduate degree in Computer Engineering.

34. Plaintiff Erdmann-Browning has Multiple Sclerosis. She worked for years in high tech until the progressive deterioration of her health left her unable to work.

35. When Plaintiff Erdmann-Browning lost her job, she could not maintain her housing after her family used up their savings. She and her husband became homeless. Their only monthly income is from her needs-based disability benefits and her husband's earned income.

36. Their income goes toward motel rooms, food and necessary veterinary bills for Plaintiff Erdmann-Browning's service dog, medication, ice to keep her medication cool, and food.

37. Plaintiff Erdmann-Browning requires daily medications that need to be taken with food. This means she can't skip meals. When food is limited, she has to space it out and save small amounts to consume with those medications. If she runs out of food entirely, it compromises her ability to take her medication.

38. Not having CalFresh means Plaintiff Erdmann-Browning would immediately have to survive on a very reduced diet, and if the delay continued for any length of time, not eat, which could affect her ability to take necessary medication.

39. Plaintiff Erdmann-Browning as already experienced hardship and hunger when her CalFresh benefits were interrupted and she had to use her monthly income for food, instead of motel rooms or other needs. Although she eventually got all her benefits back, the retroactive benefits came as lump sum issuance of food benefits on her EBT card and could only be used for food. Being homeless, Plaintiff cannot store much food and doesn't have a reliable way to use food that requires refrigeration. The retroactive food benefits did not replace the cash income she spent on food, while sleeping in her van and cutting back on other necessities.

40. If her CalFresh benefits were delayed or interrupted, Plaintiff Erdmann-Browning

8
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No.

cannot rely on food banks or food kitchens. Those food sources are of limited use because most of what they offer requires cooking or heating, which she cannot do when in her car. Using gas to go to these food banks or kitchens would also take funds away from renting a motel room. Additionally, if there is a system-wide shutdown of SNAP, she worries whether the food banks and kitchens would even have enough food as more households will need basic food supplies if benefits are disrupted.

### *Plaintiff Jacqueline Benitez*

41. Plaintiff Jacqueline Benitez is 22 years old and is single.

42. Plaintiff Benitez receives $55 in SNAP benefits each month. She is authorized to receive $88 in SNAP benefits as of October 1, 2023.

43. Plaintiff Benitez is a pre-school teacher, which is her sole source of earned income.

44. Plaintiff had been homeless for two years and could not find housing she could afford without a 4-year degree. She currently is attending college to get a degree in Childhood Development and Family Services so she can increase her earning capacity. She receives financial aid from her school, some of which can be used for living expenses.

45. Plaintiff Benitez's basic monthly expenses, such as rent, utilities and car insurance and gas to get to work, are close to her monthly income. She is occasionally able to save only small amounts, which she uses in the months when her basic expenses go over her income.

46. Plaintiff Benitez spends about $100 each month on food, including her CalFresh benefits. She relies on her SNAP benefits to access sufficient food each month. Even with these benefits, she generally only has enough food for a bowl of cereal and one full meal a day, which she sometimes can supplement with snacks from her worksite.

47. A system-wide shutdown of SNAP would cut Plaintiff Benitez's small food budget by more than half, leaving her unable to meet her food needs.

48. If her CalFresh benefits are disrupted, Plaintiff Benitez would struggle to eat every day.

//
//

## LEGAL FRAMEWORK

### Overview of the SNAP Program

49. The Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703, was enacted to promote the general welfare and safeguard the health and well-being of the Nation's population by helping low-income households access nutrition and alleviate hunger and malnutrition.

50. On October 1, 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program and the Food Stamp Act was renamed the Food and Nutrition Act of 2008. *See* Pub. L. 110-246, §§ 4001-02. The program's stated purpose is to "promote the general welfare and to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." Food and Nutrition Act of 2008, 7 U.S.C. § 2011; 7 C.F.R. § 271.1(a).

51. Each state is responsible for administering SNAP. 7 U.S.C. §§ 2012(s), 2020; 7 C.F.R. § 271.4(a).

52. Applicants who meet requirements of limited income and financial resources can receive dedicated funds to purchase food. 7 U.S.C. §§ 2014, 2017. To be eligible for SNAP benefits, an applicant's net countable income generally must be below the federal poverty level, *Id.* § 2014(c)(1), and the household must meet other eligibility requirements set forth in the Food and Nutrition Act. *Id.* § 2014.

53. For Federal Fiscal Year 2023 (October 1, 2022 to September 30, 2023), the net monthly income federal poverty level is $1,525.83 for a family of two. The most recent USDA demographic data shows that 65 percent of SNAP participant households live in families with children, with 11 percent of the families receiving need-based cash aid; 36 percent are in households with members who are seniors or are disabled; and 41 percent are in households with low-wage workers.

54. Applicants who SNAP state agencies find to be eligible under federal standards are "certified" for SNAP participation and receive an Electronic Benefit Transfer ("EBT") card that can only be used to purchase food that meets SNAP requirements at one of the nation's 259,000 authorized SNAP retailers. The amount of benefits an applicant receives is called an allotment.

The SNAP benefit allotment formula is based on the premise that SNAP recipients spend 30 percent of their net income on food. 7 U.S.C. § 2017(a); 7 C.F.R. § 273.10(e)(2)(ii)(A). Very poor households receive larger benefits than households closer to the poverty line since they need more help affording an adequate diet. As of September 2023, for a family of two in California, the maximum allotment is $516.

55. Each month, state SNAP agencies, acting through EBT vendors and on behalf of USDA, load the full value of each household's monthly allotment into the household's account, which the household accesses by using their EBT card to purchase food in the same way one uses a debit card. *See* 7 U.S.C. §§ 2016(g), 2018. States can make the benefits available on the first day of each month or stagger the issuance of benefits over a longer period of time. Id. § 2016.

56. From the perspective of the recipient, the EBT system operates similarly to other debit card systems. When SNAP recipients use their EBT card at a retailer's point of sale machine, an electronic message goes to a computer for approval. If the purchase is approved, the customer's EBT account is immediately debited and the retailer's account gets credited. At the end of the business day, transactions are totaled and the funds are moved. The retailer will usually receive money from an EBT transaction within 2 banking days. 7 C.F.R. § 274.8(a)(3).

57. USDA also has a disaster SNAP food assistance program known as Disaster Supplemental Nutrition Assistance Program ("D-SNAP"). D-SNAP provides food assistance to disaster victims and can offer emergency aid within a matter of days to help victims purchase food. 7 U.S.C. § 2014(h); 7 C.F.R. § 280.

## CLASS ALLEGATIONS

58. Plaintiffs Erdmann-Browning and Benitez bring this action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of a proposed class defined as:

> All households who are or will be certified to receive Supplemental Nutrition Assistance Program (SNAP) benefits for October 2023 and subsequent months in the 50 states, the District of Columbia, Guam, and the Virgin Islands.[2]

---

[2] The U.S. territories of the Commonwealth of Puerto Rico, American Samoa, and the Commonwealth of the Northern Mariana Islands are excluded from the class, as, the Nutrition

(Footnote Cont'd on Following Page)

59. The class is so numerous that joinder of all class members is impracticable. There are over 40 million persons in the United States who received SNAP benefits as of June 2023. In the event of a government shutdown, all individuals and families who are eligible under the Food and Nutrition Act to receive SNAP benefits will not receive their SNAP benefits with which to buy food, starting in October 2023 and throughout the shutdown.

60. Questions of law or fact common to the class will drive the resolution of this action. Specifically, Plaintiffs' and the proposed class's claims in this Action all turn on the common question of whether Defendants have failed to meet their statutory obligation to provide SNAP benefits under federal law and regulations.

61. The named Plaintiffs' claims are typical of the claims of the class. Plaintiffs Erdmann-Browning and Benitez are both current SNAP recipients. Upon a government shutdown and absent USDA approving the use of carry-over funds, contingency reserves or a continuing resolution, both Plaintiffs, like other members of the proposed class, will not have their monthly benefits loaded onto their SNAP EBT cards. Plaintiffs have no individual circumstances that make their claims atypical of the class.

62. The named Plaintiffs will fairly and adequately protect the interests of the proposed class. In supporting their individual claims, the named individual Plaintiffs will simultaneously advance the claims of absent class members. The named Plaintiffs are aware of no conflicts of interest that would render them an inadequate class representative.

63. The named Plaintiffs and the proposed class are represented by the Western Center on Law and Poverty and the Impact Fund, whose attorneys are experienced in class action litigation and will adequately represent the class. Western Center has litigated numerous public benefits class actions in state and federal courts throughout California. The Impact Fund has litigated numerous class action cases in this District and other federal courts.

64. Certification under Rule 23(b)(2) is appropriate because Defendants have acted or

---

Assistance Program (NAP) block grants provide food assistance to low-income households in those areas, which are subject to annual appropriations to operate. The Food distribution program on Indian reservations is also excluded from the class, as funds made available for a fiscal year remain available for obligation for a period of 2 fiscal years. 7 U.S.C.A. § 2013(b)(7)(A).

failed to act with regard to the proposed class and subclass as a whole. Declaratory and/or injunctive relief is appropriate and applies to the proposed class and subclass as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Violation of the Administrative Procedures Act, 5 U.S.C. § 500, *et seq.*, for Failure to Adhere to the Food and Nutrition Act of 2008, 7 U.S.C. § 2011, *et seq.*, Against Defendant Vilsack)

65. Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set herein.

66. Under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*, this Court has authority to review and to hold unlawful and set aside agency actions that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

67. Defendant Vilsack has a duty to furnish SNAP benefits to "all eligible households who make applications for such participation." 7 U.S.C. § 2014(a).

68. Any action, including delaying instructions to states regarding processing benefits for upcoming months, that disrupts timely issuance of SNAP benefits in anticipation of or due to the absence of an annual appropriation for Fiscal Year 2024 violates the Food and Nutrition Act, which requires Defendants to ensure that states timely issue SNAP benefits. *See id.*

### SECOND CLAIM FOR RELIEF

(Writ of Mandamus Pursuant to 28 U.S.C. § 1361 Against Defendants Vilsack and Young)

69. Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set herein.

70. Under 28 U.S.C. § 1361, this Court has original jurisdiction over mandamus actions to compel an officer or employee of the United States or any agency to perform a duty owed to the Plaintiffs.

71. The Food and Nutrition Act gives the Secretary of Agriculture a ministerial, nondiscretionary duty to instruct states to continue sending issuance files to EBT providers so long

as Congress has not enacted legislation limiting benefits. *See* 7 U.S.C. §§ 2016(g)(2), 2017(c)(1), 2020(e)(3), (4), (9).

72. 31 U.S.C. § 1512 requires the Office of Management and Budget to "apportion" an appropriation before it is spent. Apportionments designate the time periods during which an appropriation may be obligated, the activities for which it may be spent, or both. *Id.* § 1512(b)(1). No federal official may allow federal funds to be obligated outside the bounds of an apportionment. 31 U.S.C. § 1517(a)(1).

73. Defendant Young has a ministerial duty under the Food and Nutrition Act and the Congressional Budget and Impoundment Control Act of 1974 (Pub. L. No. 93–344, 88 Stat. 297) to instruct USDA to obligate October 2023 benefits from the fiscal year 2023 appropriation.

74. Despite demand, Defendants Vilsak and Young refuse to carry out their ministerial duties.

75. Plaintiffs are beneficially interested in the outcome of the proceeding and have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

(Declaratory Relief Pursuant to 28 U.S.C. §§ 2201-2202 Against Defendant Vilsack and Young)

76. Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set herein.

77. Under 28 U.S.C. § 2201, this Court has authority to issue a judgment declaring the rights of the parties.

78. An actual controversy exists between Plaintiffs and the proposed class, on the one hand, and the Defendants. Defendants' actions have denied Plaintiffs and the proposed class SNAP benefits they are entitled to receive. Defendants' actions contradict the Food and Nutrition Act, 7 U.S.C. § 2020(e)(2)(B)(i), and therefore violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C). Defendants contend that their actions are lawful.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

1. Take jurisdiction of this case;

2. Certify this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

3. Preliminarily and permanently enjoin Defendants from interfering with Plaintiffs' ability to timely receive and redeem SNAP benefits to which they are entitled, contrary to the Food and Nutrition Act, 7 U.S.C. § 2011, *et seq.*;

4. Issue a writ of mandamus directing Defendant Young to apportion the necessary funds from the Fiscal Year 2023 annual appropriation to fund October 2023 SNAP benefits and Defendant Vilsack to direct state SNAP agencies to issue such benefits;

5. Declare that Defendants' policies and practices of disrupting Plaintiffs' ability to receive and redeem SNAP benefits in the absence of an appropriation, by de-authorizing retailers or through other means, violates the Food and Nutrition Act, 7 U.S.C. § 2011, *et seq.*;

6. Award Plaintiffs their litigation costs and reasonable attorneys' fees, as appropriate; and

7. Grant such other and further relief as the Court may deem just and proper.

Dated: September 11, 2023                    WESTERN CENTER ON LAW & POVERTY

By: _____
Jodie Berger

Attorneys for Plaintiffs