Jodie Berger (SBN 124144)
jberger@wclp.org
Richard Rothschild (SBN 67356)
rrothschild@wclp.org
Robert Newman (SBN 86534)
rnewman@wclp.org
Antionette Dozier (SBN 244437)
adozier@wclp.org
**WESTERN CENTER ON LAW & POVERTY**
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
T: (213) 235-2617
F: (213) 487-0242

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
**IMPACT FUND**
2080 Addison St., Suite 5
Berkeley, CA 94704
T: (510) 845-3473
F: (510) 845-3654

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKA OKJE ERDMANN-BROWNING and JACQUELINE BENITEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS J. VILSACK, Secretary, United States Department of Agriculture, in his official capacity; SHALANDA YOUNG, Director of the United States Office of Management and Budget, in her official capacity.<br><br>Defendants. | Case No.: 3:23-cv-04678<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**<br><br>CLASS ACTION<br><br>Hearing Date: September 13, 2023<br>Time: TBD<br><br>Action filed: September 12, 2023 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ 3

I. INTRODUCTION .............................................................................................................................. 5

II. FACTUAL BACKGROUND ........................................................................................................... 5

   A. USDA Provides SNAP Benefits to Low-Income Households. ................................................. 5

   B. USDA and OMB Inaction Will Cause a Delay in SNAP Benefits Issuance. ......................... 7

   C. Plaintiffs Erdmann-Browning and Benitez ................................................................................ 8

III. PROCEDURAL BACKGROUND .................................................................................................. 9

IV. ARGUMENT .................................................................................................................................. 10

   A. Plaintiffs Are Likely to Succeed on the Merits. ....................................................................... 11

      1. Defendants have an obligation to ensure that states timely issue October 2023 benefits for SNAP households. .............................................................................................................. 12

      2. The funds necessary to pay October benefits were obligated in Federal Fiscal Year 2023. ............................................................................................................................................. 13

      3. There are sufficient funds in the Federal Fiscal Year 2023 SNAP appropriation to pay October 2023 SNAP benefits. ................................................................................................... 15

      4. Defendants may use reserves to fund October benefits that are not obligated in September. ............................................................................................................................................. 15

   B. Plaintiffs Will Suffer Irreparable Harm. ................................................................................... 16

   C. The proposed injunction will preserve the status quo. ........................................................... 18

   D. The Balance of Equities and the Public Interest Both Favor Plaintiffs. ............................... 19

V. CONCLUSION ................................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................................................................................... 11

*Arizona Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) .................................................................................................... 18

*Booth v. McManaman*,
  830 F. Supp. 2d 1037 (D. Haw. 2011) ........................................................................................ 17

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) .................................................................................................... 19

*Friends of the Wild Swan v. Weber*,
  767 F.3d 936 (9th Cir. 2014) ...................................................................................................... 11

*Haskins v. Stanton*,
  621 F. Supp. 622 (N.D. Ind. 1985) ............................................................................................. 17

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ...................................................................................................... 18

*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) .................................................................................................... 20

*Maine Community Health Options v. United States*,
  140 S. Ct. 1308 (2020) ................................................................................................................ 14

*Newman v. Chater*,
  87 F.3d 358 (9th Cir. 1996) ........................................................................................................ 12

*Paxton v. Secretary of Health and Human Services*,
  856 F. 3d 1352 (9th Cir. 1988) ................................................................................................... 17

*Sacks v. Office of Foreign Assets Control*,
  466 F.3d 764 (9th Cir. 2006) ...................................................................................................... 12

*Southside Welfare Rights Org. v. Stangler*,
  156 F.R.D. 187 (W.D. Mo. 1993) ............................................................................................... 17

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) .................................................................................... 10

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................... 10, 11, 20

**Statutes**

5 U.S.C. § 706 (2)(A) .................................................................................................. 13
5 U.S.C. § 706(2) ........................................................................................................ 11
7 U.S.C. § 2011 ........................................................................................... 6, 11, 15, 20
7 U.S.C. § 2013 ............................................................................................................. 6
7 U.S.C. § 2020(e)(2)(B)(i) ..................................................................................... 6, 12
7 U.S.C. § 2020(g) ................................................................................................ 13, 14
7 U.S.C. § 2027(b) ...................................................................................................... 15
7 U.S.C § 2014(a) ....................................................................................................... 12
31 U.S.C. § 1341(a) .................................................................................................... 19
31 U.S.C. § 1512(b)(2) ................................................................................... 7, 11, 13

**Rules**

Fed. R. Civ. P. 65(b)(1)(A) ......................................................................................... 10

**Regulations**

7 C.F.R. § 273.10 .......................................................................................................... 6
7 C.F.R. § 274.2(g)(1) ................................................................................................. 14

## I. INTRODUCTION

At stake in this Application is the food security of 40 million low-income Americans, more than 10% of the country's population. Unless this Court intervenes by September 15, many—indeed, most—of these people will not receive the October Supplemental Nutrition Assistance Program ("SNAP") benefits that they rely on for their subsistence food needs. The two federal agencies that can prevent this disaster—the United States Department of Agriculture ("USDA") and the Office of Management and Budget ("OMB")—have refused to direct the states to continue the actions necessary for issuance of the October benefits.

These agencies likely fear the impending government shutdown, but they are mistaken. As described herein, the SNAP appropriation for the federal fiscal year ending on September 30, 2023, properly includes October issuances that are initiated in September and is more than sufficient for that purpose. With millions of Americans facing irreparable harm caused by denial or delay of October benefits, Plaintiffs ask this Court to issue a temporary restraining order directing the Secretary of Agriculture and the Director of OMB to fulfill their statutory obligation to continue the normal issuance of SNAP benefits in October 2023 without interruption.

Director Young must instruct USDA to obligate October 2023 benefits from the Federal Fiscal Year 2023[1] appropriation and/or contingency funds. Secretary Vilsack and USDA must assure states that they should continue to take all actions on the normal schedule to ensure timely disbursement of October 2023 SNAP benefits.

## II. FACTUAL BACKGROUND

### A. USDA Provides SNAP Benefits to Low-Income Households.

SNAP is the nation's most important and effective anti-hunger program. Recognizing that "the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households," Congress enacted SNAP to "safeguard the health and well-being of the Nation's population" and "alleviate . . . hunger and malnutrition" by

---

[1] Fiscal Year 2023 runs from October 1, 2022, through September 30, 2023.

"permit[ing] low income households to obtain a more nutritious diet through normal channels of trade."  7 U.S.C. § 2011.

The Food and Nutrition Act ("the Act") and USDA regulations determine SNAP eligibility nationwide.  *Id*. § 2014; 7 C.F.R. § 273.10.  SNAP households are extremely poor— their net income after deductions for basic needs other than food generally is under 100% of the Federal Poverty Level, which is currently $1,215 per month for an individual or $2,500 per month for a family of four.  Department of Health & Human Services, *2023 Poverty Guidelines: 48 Contiguous States (all states except Alaska and Hawaii)*, January 2022, https://aspe.hhs.gov/sites/default/files/ documents/1c92a9207f3ed5915ca020d58fe77696/detailed-guidelines-2023.pdf.  SNAP provides monthly allotments that eligible low-income individuals and families use to purchase food at authorized retailers.  7 U.S.C. § 2013.  SNAP is a federal-state partnership; USDA pays the full cost of SNAP benefits, which are administered by state SNAP agencies.  *See id.* §§ 2013(a), 2020.

USDA is responsible for ensuring that state agencies comply with the Act, including by ensuring state agencies provide timely service for SNAP recipients.  *See id*. §§ 2020(e)(2)(B)(i), 2020(g).  Each month, state SNAP agencies begin the benefits issuance process by submitting electronic data files on individual household SNAP eligibility for all households for the following month to a third-party vendor.  *See id*. § 2016(h).  The vendors then use the data files to load the full value of each household's monthly allotment onto the household's account via an Electronic Benefits Transfer ("EBT") card that can be used to purchase food in the same way one uses a debit card.  *See id*. §§ 2016(g), (h) (setting forth requirements for issuance of benefits through an electronic transfer system).

The state agencies set deadlines for transmission of the files in order to ensure timely issuance of benefits.  In 2013, USDA indicated that several states provide the issuance files as early as the 15th of the month.  Decl. of Jodie Berger in Supp. of Pls.' Ex Parte App. for TRO and OSC re: Prelim. Inj. ("Berger Decl. ISO TRO"), ¶ 8, Ex. 5 (Supplemental Nutrition

Assistance Program [SNAP] Lapse in Funding Questions from States – Part 5 October 11, 2013; Part 5 October 11, 2013). California, for example, has a deadline to transmit the data files on the 15th of the month. *Id*., ¶ 6, Ex. 3 (letter from Alexis Fernández Garcia, Deputy Director of California Department of Social Services).

OMB is responsible for apportioning funds necessary for USDA to obligate the funds related to the benefits issuance. 31 U.S.C. § 1512(b)(2).

### B. USDA and OMB Inaction Will Cause a Delay in SNAP Benefits Issuance.

It appears highly likely that the federal government will shut down at the end of the current federal fiscal year because of a lack of appropriations legislation for the Fiscal Year running from October 1, 2023, through September 30, 2024 or a temporary continuing resolution.[2] Historically, USDA has taken the position that without an annual appropriations bill or a continuing resolution, and absent utilization of contingency reserves, SNAP program benefits issuances must cease. USDA communicated that position to the states in 2013 in a series of memoranda. *See* Berger Decl. ISO TRO, ¶ 7, Ex. 4 . That position is also reflected in the various USDA contingency plans.[3]

Although USDA has faced impending government shutdowns several times, USDA has never committed in advance to a strategy to continue benefits if there is a lapse in annual or continuing resolution funding. In 2013, USDA's only response to the states about issuing benefits after the end of a lapse in appropriated funds was that "USDA would evaluate available options, seek legal determinations, and make a final decision about a course of action closer to that time." Berger Decl. ISO TRO, , ¶ 7, Ex.4.

---

[2] Melanie Zanona & Annie Grayer, *House GOP's government shutdown threat set to collide with demands for Biden impeachment*, CNN Politics, September 11, 2023, https://www.cnn.com/2023/09/11/politics/impeachment-government-shutdown-house-return/index.html.

[3] *See* Food, Nutrition & Consumer Servs., FNS Contingency Plan for Shutdown Due to a Lapse in Appropriations (January 2018), https://www.usda.gov/sites/default/files/documents/usda-fns-shutdown-plan.pdf; Food, Nutrition & Consumer Servs., Preparations for Shutdown as a Result of a Lapse in Appropriations FNS Contingency Plan for Shutdown Due to a Lapse in Appropriations (2021), https://www.usda.gov/sites/default/files/documents/fns-2021-contingency-plan.pdf.

In 2013, USDA also instructed the states that they would be liable, without any guarantee of federal reimbursement, if they used state funds to issue food benefits during a lapse in appropriations, and that if states issued cash payments for food, there would be no reimbursement absent a specific Congressional vehicle. *Id.* ¶ 8, Ex. 5. USDA also directed states to hold their benefit issuance files and delay normal transmission to their EBT vendors until further notice, to "preserve maximum flexibility . . . should the lapse in funding continue[.]" *Id.* ¶ 9, Ex. 6.

This year, USDA has made no statement about its strategy to address the lack of an annual appropriations bill or continuing resolution. Given prior USDA statements that made no promise of federal reimbursement and made it clear that any state-level alternatives that use their own funds is done at their own risk, states need clear instructions that they can send their benefit issuance reports for October 2023.

As described in Section IV.A.3. below, sufficient funds remain in the Federal Fiscal Year 2023 budget to cover funds obligated in September when state agencies submit their master issuance files, and additional funding is available through contingency reserve funds. *See* Decl. of David Super in Supp. of Pls.' Ex Parte App. for Temporary Restraining Order ("Super Decl."), ¶¶ 15, 16. Director Young must apportion these funds or otherwise confirm that the October issuances may proceed. As OMB has yet to take such actions, the delay or suspension of SNAP benefits for October 2023 will occur.

C. **Plaintiffs Erdmann-Browning and Benitez.**

Plaintiffs Erdmann-Browning and Benitez are currently eligible to receive SNAP benefits through California's CalFresh program. Declaration of Anika Okje Erdmann-Browning in Supp. of Pls.' Ex Parte App. for Temporary Restraining Order ("Erdmann-Browning Decl."), ¶ 4; Declaration of Jaqueline Benitez in Supp. of Pls.' Ex Parte App. for Temporary Restraining Order ("Benitez Decl."), ¶ 5. Plaintiffs face ongoing challenges purchasing sufficient food, even with assistance from SNAP. Erdmann-Browning Decl. ¶¶ 10-12; Benitez Decl. ¶¶ 10-13. Both

Plaintiffs would go hungry if their SNAP benefits are delayed. Erdmann-Browning Decl. ¶ 16; Benitez Decl. ¶¶ 12, 14.

Plaintiff Erdmann-Browning meets most of her family's food needs through SNAP benefits. Erdmann-Browning Decl. ¶ 12. She is currently unhoused and uses her limited income for motel rooms and basic needs. *Id*. Food banks are of limited use to Plaintiff Erdmann-Browning since she cannot heat or cook food. *Id.* ¶¶ 14-15. Food banks would also require her to use her limited funds to buy gas for travel to the food bank site, rather than putting those funds toward motel rooms. *Id.* ¶ 14.

Plaintiff Benitez has a total food budget of $100 per month, more than half of which comes from her SNAP benefits. Benitez Decl. ¶ 14. Even with her benefits, she usually eats only a bowl of cereal and one meal each day, sometimes supplemented by snacks from her worksite. *Id*. If her SNAP benefits are delayed or suspended, she will lose a significant portion of her already limited food buying capacity. *Id.*

Plaintiff Erdmann-Browning has experienced previous interruptions of her SNAP benefits, and they created significant hardships. Erdmann-Browning Decl. ¶ 13. Income she would have used to stay in a motel had to be used for food, so she had to shelter in her car more often. She also had to divert cash normally used for motels to purchase ice to keep her multiple sclerosis medications cool. *Id*. Receiving retroactive benefits as a lump sum, after the fact, did not make up for her lost income. *Id*.

## III. PROCEDURAL BACKGROUND

Plaintiffs' counsel attempted to avoid the need for emergency court intervention. On August 30, 2023, counsel wrote to Defendant Vilsack, requesting assurance that the United States Department of Agriculture would continue program operations as usual. Berger Decl. ISO TRO ¶ 2. On September 7, 2023, counsel also requested Defendant Young confirm that the United States Office of Management and Budget would apportion funds or otherwise confirm that the October issuances may proceed. *Id*. ¶ 4. The letter to Defendant Young could not be delivered, and attempts to email the letter or have the U.S. Attorney's office transmit the letter to

the Director were unsuccessful. *Id*. ¶¶ 5, 11. On September 11, 2023, counsel wrote to Defendants Vilsack and Young to notify them of the filing of this case and the hearing on Plaintiffs' ex parte applications for temporary restraining order and provisional class certification. *Id*. ¶ 10.i. As of the date of this filing, Defendants have not responded. *Id*. ¶ 11.

Additionally, on August 22, 2023, counsel contacted the California Department of Social Services ("CDSS") to determine whether the state intends to timely transmit the EBT files in September for the October benefits issuance. *Id*. ¶ 6. On August 31, 2023, CDSS responded that it "is committed to mitigating risks to CalFresh households resulting from a federal government shutdown and is working with its state and federal partners to that end." *Id*. It did not provide the requested assurance regarding the transmission of the EBT issuance files, though it did confirm that the final day for it to transmit the files is September 15. *Id*. As Defendants have not indicated whether they will permit states to submit issuance files to EBT vendors on the normal schedule and have not responded to counsel's demands, Plaintiffs have no alternative but to file the present complaint and seek an order to prevent irreparable harm to SNAP recipients throughout the country.

## IV.    ARGUMENT

This Court should grant a temporary restraining order ("TRO") to immediately protect the federal food benefits of more than 40 million people who rely upon SNAP to avoid daily hunger. A TRO may issue upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A court may issue preliminary injunctive relief if the plaintiff can establish (1) that they are likely to suffer irreparable harm in the absence of preliminary relief; (2) that the balance of equities tips in their favor; (3) that an injunction is in the public interest; and (4) that they are likely to succeed on the merits. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit employs a "sliding scale" approach to *Winter's* four-element test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Under this approach, Plaintiffs need only show that there are "serious questions going to the merits" where, as here, "the balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are met." *See Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). A stronger showing of one element may offset a weaker showing of another. *All. for the Wild Rockies*, 632 F.3d at 1134-35.

A temporary restraining order is warranted to prevent immediate and irreparable harm to Plaintiffs, who will imminently experience hunger or forego other necessary expenses such as housing or shelter to pay for food absent an injunction. Such injunction would be in the public interest, as the stated purpose of the SNAP program is to prevent hunger and malnutrition and to "safeguard the health and well-being of the Nation's population." 7 U.S.C. § 2011. The equities also tip strongly in Plaintiffs' favor because Defendants have the funds to continue program operation for the duration of the proposed Order, causing no harm to Defendants.

### A.   Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on their claim that Defendants are required to continue with the apportionment and reimbursement of monies to pay SNAP benefits for October 2023. Failing to do so would violate Defendant Vilsack's obligations under the Act, 7 U.S.C. § 2011 *et seq.*, and would violate Defendant Young's obligations under 31 U.S.C. § 1512(b)(2). Such violation would be unlawful and unnecessary, given that October 2023 SNAP benefits were obligated in September 2023 during Federal Fiscal Year 2023 and more than sufficient funds remain. Plaintiffs request that the Court "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside" Defendants' actions as "without observance of procedure required by law," among others. 5 U.S.C. § 706(2).

//
//
//
//

### 1. Defendants have an obligation to ensure that states timely issue October 2023 benefits for SNAP households.

The Food and Nutrition Act expressly mandates that "assistance under this Program shall be furnished to all eligible households who make application for such participation." 7 U.S.C § 2014(a). The Ninth Circuit has "made clear that Congress's or an agency's use of the word 'shall' indicates a mandatory duty that is not subject to discretion." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 778 (9th Cir. 2006). While the courts "will depart from the interpretation of 'shall' as mandatory where a 'convincing argument to the contrary is made,'. . . such occasions are rare." *Id*., citing *Newman v. Chater*, 87 F.3d 358, 361 (9th Cir. 1996). This is not one of those rare occasions. Under the Act, state agencies must "provide timely, accurate, and fair service to applicants for, and participants in, the supplemental nutrition assistance program." 7 U.S.C. § 2020(e)(2)(B)(i).

Defendant Vilsack and USDA are responsible for ensuring that state agencies comply with the Act, including by issuing timely service for SNAP recipients. Section 2020(g), for instance, governs the situation when the "Secretary determines" that there is a "pattern of lack of compliance by a State agency . . . in the administration of [SNAP.]" *Id*. § 2020(g). In those circumstances, "the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure." *Id*. "If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance" and also "shall proceed to withhold from the State such funds . . . as the Secretary determines to be appropriate[.]"

To fulfill its responsibility to ensure that state agencies comply with the Act, USDA must continue to reimburse SNAP issuances obligated in Federal Fiscal Year 2023, including obligations for October 2023 benefits. If USDA instructs the states to delay the process for issuing October 2023 benefits or leaves unclear how states should respond to the impending governmental shutdown until dangerously close to the deadline, state agencies will violate their duties under section 2020(e)(2)(B)(i) and USDA in turn will have violated section 2020(g).

Defendant Young and OMB are required to apportion funds for USDA to continue issuing SNAP benefits obligated during the Federal Fiscal Year 2023. *See* 31 U.S.C. § 1512(b)(2) ("The official designated in section 1513 of this title to make apportionments shall apportion an appropriation under paragraph (1) of this subsection as the official considers appropriate. Except as specified by the official, an amount apportioned is available for obligation under the terms of the appropriation on a cumulative basis unless reapportioned."). Defendants inaction raises questions about the funding available for October 2023 benefits, which raises additional concerns for state agencies.

Violation of these duties is "not in accordance with the law," and Defendants' actions must be set aside. 5 U.S.C. § 706 (2)(A).

### 2. The funds necessary to pay October benefits were obligated in Federal Fiscal Year 2023.

Each state agency's contract with its EBT vendor requires that the state agency send a master SNAP issuance file to the vendor by a certain deadline, in the month before the month benefits will be issued (for example, September 15 for October benefits). USDA has stated that several states send their issuance files on the 15th of the month. Berger Decl. ISO TRO, ¶ 8, Ex. 5. The California Department of Social Services has confirmed they send their issuance files on the 15th of the month. *Id.* at ¶ 6, Ex. 3. Issuance files sent by state agencies to EBT vendors before September 30, 2023, are obligated in Fiscal Year 2023 because once the files are sent the vendor is contractually obligated to load the benefits on the cards and make the funds timely available to individual households.

The federal government provides clear guidance on the preparation and execution of the federal budget. With respect to federal funds, the term "obligation" is defined as "a binding agreement that will result in outlays, immediately or in the future."[4] When an action is taken that

---

[4] OFFICE OF MGMT. & BUDGET, EXECUTIVE OFFICE OF THE PRESIDENT, OMB CIRCULAR NO. A-11 (2023), § 20.3, https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf. (last visited September 11, 2023).

requires the Government to make payments to the public or from one Government account to another, an obligation has been incurred.[5]  *See also Maine Community Health Options v. United States*, 140 S. Ct. 1308, 1319 (2020) (defining an obligation as a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty . . . that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States.").

In this case, the transmission of the EBT files to the vendors is the point at which the SNAP funds are obligated.  Thus, the obligation is incurred during the fiscal year of the transmission, rather than the fiscal year of the benefit month , when the two are different.  Although USDA has historically considered SNAP funds as obligated in the benefit month, that approach is inconsistent with the definition of obligation set forth by OMB and the U.S. Supreme Court in *Maine Community Health Options*.  It is also inconsistent with the procedures set forth in the federal regulations.  Once a state agency transmits a SNAP issuance file to its EBT vendor, the federal government is legally bound to make the payments represented by the benefits in that file.  Federal regulations allow rescission of benefits after issuance has been requested only "in the event benefits are erroneously posted."  7 C.F.R. § 274.2(g)(1).  Previously posted benefits that correctly correspond to households' benefits eligibility cannot be considered "erroneous" at the time they are posted because of subsequent developments in Congress or in Defendants' policies.

As a result, the benefits contained in state SNAP issuance files constitute obligations of the United States Government because they are "a binding agreement that will result in outlays … in the future," as defined by OMB Circular A-11, § 20.3.  Because October 2023 benefits are obligated in September, before the end of Fiscal Year 2023, the obligations is properly charged to the current fiscal year appropriation.

 //

 //

 //

---

[5] *Id.* § 20.5.

### 3. There are sufficient funds in the Federal Fiscal Year 2023 SNAP appropriation to pay October 2023 SNAP benefits.

The Food and Nutrition Act requires only that the value of the benefits issued must be within the current year's appropriation. *See* 7 U.S.C. § 2027(b). At least $33 billion remains in the Fiscal Year 2023 appropriation, which is several times the amount required to pay SNAP benefits obligated in September 2023 for issuance in October 2023. Super Decl. ¶ 12.

The Consolidated Appropriations Act 2023 (Pub. L. No. 117–328, December 29, 2022, 136 Stat. 4459) includes an appropriation of $150,863,723,000 "[f]or necessary expenses to carry out the Food and Nutrition Act of 2008 (7 U.S.C. § 2011 *et seq*.)" during Fiscal Year 2023, which ends on September 30, 2023. Super Decl. ¶ 11 (citing 136 Stat. at 4488-4489). The most recent USDA KeyData Report shows that, as of June 2023, SNAP outlays total $89,297,763,200 for Fiscal Year 2023,[6] leaving over $36 billion for the remainder of the year. *Id*. at ¶¶ 7, 12. The KeyData Report shows that the end of pandemic emergency allotment issuance reduced benefit costs by more than $3 billion per month. *Id*. at ¶ 8. Since the emergency allotments expired, SNAP's average monthly expenses have been $7.595 billion. *Id*. at ¶ 8. If SNAP's costs continue for the next three months at the same rate and all other obligations are fulfilled,[7] USDA will record approximately $117.6 billion in expenses charged against the Fiscal Year 2023 SNAP appropriation, leaving a remainder of approximately $36 billion. *Id*. at ¶¶ 11, 12. It is a virtual certainty that the remaining funds in the Fiscal Year 2023 appropriation will be sufficient to pay benefits obligated in September for October issuance. *Id*. at ¶ 16.

### 4. Defendants may use reserves to fund October benefits that are not obligated in September.

Not all SNAP benefits issued in October 2023 will be obligated in September. Working families often rely on SNAP to purchase food during brief periods of unemployment or underemployment, many households enter and leave the program every month. Therefore, the

---

[6] https://www.fns.usda.gov/data/June-2023-keydata-report
[7] The Fiscal Year 2023 appropriation also funds the Nutrition Assistance Program block grant in Puerto Rico and a much smaller program in American Samoa, which are capped at less than $2.82 billion for Fiscal Year 2023.

households newly applying for SNAP benefits in September and not yet certified by state SNAP agencies by September 30 will have their benefits obligated in October. This is also true for households newly applying in October and certified by state agencies to receive benefits in October. In addition, state agencies will not finish recertifying all on-going recipients whose existing certification periods expired before September 30; when the state agencies approve their applications in October, they will receive benefits obligated that month.

Defendant Vilsack can fulfill October benefits obligated after September 30 by reallocating contingency reserves for that purpose. This contingency reserve consists of $3 billion that the Fiscal Year 2023 SNAP Appropriation provides shall not expire until September 30, 2025, and another $3 billion that the Fiscal Year 2022 SNAP Appropriation provides shall not expire until September 30, 2024. Super Decl. ¶ 14. Therefore, a total of $6 billion in contingency reserve funds will remain available through December 31, 2023.

Although the combined $6 billion cannot fulfill a full month of SNAP benefits, it is more than sufficient to fund October 2023 issuances that were obligated after September 30. *Id.* Therefore, existing appropriations are more than sufficient to cover all SNAP benefits in October 2023.

Because sufficient funds exist, Defendants must perform their non-discretionary duties. Refusing to do so violates the Food and Nutrition Act and the Administrative Procedure Act. As a result, Plaintiffs are likely to succeed on the merits of their claim.

**B.   Plaintiffs Will Suffer Irreparable Harm.**

Plaintiffs and proposed class members are likely to suffer irreparable harm unless this Court grants a temporary restraining order requiring Defendants to fulfill their statutory obligation to continue the normal issuance of SNAP benefits in October 2023. An interruption in SNAP benefits will cause millions of recipients to go hungry, as food banks are already stretched to capacity and will struggle to meet the tremendous increase in demand. With the end of Pandemic Emergency Allotments as of March 2023, which had significantly increased household benefits, these free food sources have already experienced a huge increase in demand. Decl. of

Rebecca Silva in Supp. of Pls.' Ex Parte App. for Temporary Restraining Order ("Silva Decl."), ¶ 5. Food banks will not be able to meet the extraordinary need caused by an interruption in SNAP benefits. *Id.* ¶ 6; Decl. of Erica Padilla Chavez in Supp. of Pls.' Ex Parte App. For Temporary Restraining Order ("Chavez Decl."), ¶¶ 8-9. Nor can food banks meet all the same needs as SNAP. For example, many food banks do not provide infant formula, which is available to purchase with SNAP benefits. Silva Decl., ¶ 6.

An interruption in SNAP benefits cannot be remedied by retroactive benefits because it will not resolve the daily hunger experienced by millions of families waiting for their benefits. The Ninth Circuit has recognized that "back payments cannot erase either the experience or the negative effect of delays in the prompt provision of benefits." *Paxton v. Secretary of Health and Human Services*, 856 F. 3d 1352, 1354 (9th Cir. 1988). With regard to food assistance, multiple courts have concluded that the potential harm is particularly acute:

> [I]t is reasonable to conclude that, unless a preliminary injunction issues to prevent delays and interruptions in food stamp benefits, the plaintiffs may be deprived of food. The deprivation of this basic human need is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients.

*Haskins v. Stanton*, 621 F. Supp. 622, 627 (N.D. Ind. 1985) (citation omitted); *accord*, *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1043-44 (D. Haw. 2011). The potential harm includes, but also reaches beyond, hunger:

> The human suffering, emotional trauma and physical injury that will result from an inability to get food by this country's most needy is too obvious to need further space in this decision. Irreparable injury is clearly present, and there are no other adequate remedies at law[.]

*Southside Welfare Rights Org. v. Stangler*, 156 F.R.D. 187, 191 (W.D. Mo. 1993) (granting preliminary injunction to enforce the timely issuance of expedited food stamps).

Additionally, retroactive food benefits issued on an EBT card cannot remedy serious financial disruptions caused by a delay in SNAP benefits. Because nutrition is a basic survival need, many SNAP recipients will need to forego other necessary expenditures such as housing, water or electricity, or transportation to places of employment. Additional funds loaded onto an EBT card weeks or months later are only available for purchasing food and cannot be re-allocated to pay past due rents or other bills. For example, Plaintiff Erdmann-Browning uses all of her income to meet her subsistence needs and uses whatever she has left over to pay for motel rooms. *See* Erdmann-Browning Decl. ¶ 10. When Plaintiff Erdmann-Browning must use her available income to purchase food, she cannot afford to pay for shelter and must sleep in her car, which complicates her serious health condition and her use of necessary medications. *Id.* ¶ 13. This harm cannot be remedied by retroactive SNAP benefits.

### C.  The proposed injunction will preserve the status quo.

The requested injunction will maintain the status quo pending a determination of the case on the merits. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (the relevant "status quo" for purposes of an injunction "refers to the legally relevant relationship between the parties before the controversy arose."). Here, the status quo is for USDA to ensure that states meet their obligation to timely issue benefits, as sufficient funds remain in the current Fiscal Year's appropriation and available contingency reserves. Thus, Plaintiffs are seeking a prohibitory injunction. Even if the Court were to consider Plaintiffs' request to be for a mandatory injunction, however it would still be permissible. *See Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) ("[m]andatory injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when extreme or very serious damage will result that is not capable of compensation in damages, and the merits of the case are not doubtful.") (Citations and internal quotation marks omitted).

Plaintiffs acknowledge that, in previous years, Defendants may have charged October benefits to the federal fiscal year beginning in October. If so, this would have been improper.

Regardless of the manner in which Defendants treated previous October benefits, attributing benefits to the fiscal year in which they are obligated is more appropriate, per OMB guidance.

### D. The Balance of Equities and the Public Interest Both Favor Plaintiffs.

"When the government is a party to a lawsuit, the balance of the equities and public interest prongs of the preliminary injunction test merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  Here, the balance of equities and the public interest both tip sharply towards Plaintiffs.

First, the balance of equities favor Plaintiffs, who will suffer serious irreparable harm absent an injunction.  Plaintiffs risk imminent hunger with the loss or interruption of their benefits.  These harms far outweigh any plausible injury to Defendants who have sufficient funds available to continue operating the program for the duration of the proposed Temporary Restraining Order, which will permit the Court to maintain the status quo while the parties prepare for a hearing on the preliminary injunction.

Defendants have sufficient funds in the Federal Fiscal Year 2023 budget to fulfill their statutory obligation and continue issuing reimbursements for October 2023 SNAP benefits. Defendants also have access to contingency reserves to cover any October benefits obligated after September 30.  As a result, Defendants will not suffer any harm by continuing to operate the program for 14 days while awaiting a hearing on the merits of Plaintiffs' claims, tipping the balance of the equities sharply in Plaintiffs' favor.

Defendants may argue that they stand to suffer harm if they violate the Antideficiency Act, which prohibits agencies from incurring obligations in excess of legally available amounts. *See* 31 U.S.C. § 1341(a).  However, Plaintiffs do not seek to have Defendants incur any new obligations that exceed legally available amounts.  As described above, October 2023 benefits are properly attributed to Federal Fiscal Year 2023, which has sufficient funds to pay the benefits.

The public interest also favors Plaintiffs. The entry of an order for the continuation of SNAP will further the purpose of the Food and Nutrition Act to "safeguard the health and well-

being of the Nation's population by raining levels of nutrition among low-income households." 7 U.S.C. § 2011. Indeed, in weighing the public interest factor, the Ninth Circuit has stated that it "would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). The public interest as well as the balance of equities and other *Winter* factors overwhelmingly favors issuance of the temporary relief sought here.

## V. CONCLUSION

Plaintiffs have shown a high likelihood of success on the merits of their claims and an imminent threat of irreparable injury. Moreover, the balance of harms and public interest weigh in favor of immediate injunctive relief. Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion for a temporary restraining order and preliminary injunctive relief.

Dated: September 12, 2023                        WESTERN CENTER ON LAW & POVERTY

By: _____
    Jodie Berger
    Attorneys for Plaintiff