Jodie Berger (SBN 124144)
jberger@wclp.org
Richard Rothschild (SBN 67356)
rrothschild@wclp.org
Robert Newman (SBN 86534)
rnewman@wclp.org
Antionette Dozier (SBN 244437)
adozier@wclp.org
**WESTERN CENTER ON LAW & POVERTY**
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
T: (213) 235-2617
F: (213) 487-0242

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
**IMPACT FUND**
2080 Addison St., Suite 5
Berkeley, CA 94704
T: (510) 845-3473
F: (510) 845-3654

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANIKA OKJE ERDMANN-BROWNING and JACQUELINE BENITEZ, individually and on behalf of all others similarly situated, | Case No.: 3:23-cv-04678 |
| Plaintiffs, | **DECLARATION OF JODIE BERGER IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION** |
| v. | CLASS ACTION |
| THOMAS J. VILSACK, Secretary, United States Department of Agriculture, in his official capacity; SHALANDA YOUNG, Director of the United States Office of Management and Budget, in her official capacity. | Hearing Date: September 13, 2023 Time: TBD |
| Defendants. | Action filed: September 12, 2023 |

1

**DECLARATION OF JODIE BERGER**

2 I, Jodie Berger, declare:

3      1.     I am an attorney licensed to practice law in the State of California and am one of

4 the attorneys for plaintiffs in this case. I have personal knowledge of the facts contained in this

5 declaration unless indicated otherwise, and, if called as a witness, am competent to testify to

6 those facts.

7      2.     On August 30, 2023, I sent a demand letter by email to United States Secretary of

8 Agriculture Tom Vilsack and Deputy Undersecretary Stacy Dean, requesting that the USDA

9 confirm that it intends to issue guidance to states confirming that they should meet their regular

10 timeframe for timely issuance of SNAP benefits, or otherwise confirm that the October issuances

11 may proceed without stopping or delaying their issuance. I also sent the letter to Secretary

12 Vilsack and Undersecretary Dean by email; I did not receive a notice that the email was

13 undeliverable. Attached to this declaration and marked as Exhibit 1 is a true copy of the August

14 30, 2023 letter.

15      3.     As of 9:00 a.m. on September 12, 2023, I had yet to receive a response from the

16 USDA.

17      4.     On September 7, 2028, I sent a demand letter to Office of Management and

18 Budget (OMB) Director Shalanda Young by means of overnight delivery through the U.S Postal

19 Service. Despite a diligent search, I was unable to find an email, or public phone or facsimile

20 number for the OMB. The letter requesting that the OMB confirm that it intends to provide

21 instructions to the USDA to obligate October 2023 benefits issuances from the fiscal year 2023

22 appropriation or otherwise confirm that the October issuances may proceed. The letter requested

23 a response by close of business September 11, 2023. Attached to this declaration and marked as

24 Exhibit 2 is a true copy of the September 7, 2023 letter.

25      5.     I checked on the status of the delivery. The U.S.P.S. system tracking information

26 indicates that as of September 8, 2023, the letter was "available for pick up." The postal service

27

28

**DECLARATION OF JODIE BERGER ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:23-cv-04678

website[1] indicates that the designation "available for pickup" means "The package cannot be delivered. It is available for pickup by you or your authorized agent at your local Post Office™ during business hours. **A redelivery cannot be scheduled for this package**." (Emphasis in the original.)  On the same day, I attempted to email the letter by sending it via email to 8 different email addresses that I believed to be similar to email address protocol for the OMB. All of them were rejected as undeliverable.

6.    The California Department of Social Services identified September 15, 2023 as the date by which they must transmit the electronic data files to the state's Electronic Benefit Transfer vendor. Although I asked the agency to confirm that the state would transmit the electronic data by the deadline, it only responded that it was working with state and local partners to mitigate any harm from a governmental shutdown. Attached to this declaration and marked as Exhibit 3 is a true copy of the August 31, 2023 letter from the California Department of Social Services.

7.    In 2013, USDA sent the states 6 sets of "questions and answers. USDA took the position that without an annual appropriations bill or a continuing resolution, and absent utilization of contingency reserves, SNAP program benefits issuances must cease. I have attached as Exhibit 4 a true and correct copy of one of these sets, "Supplemental Nutrition Assistance Program [SNAP] Lapse in Funding Questions from States – Part 2 October 3, 2013, which most explicitly conveys that position.  USDA's response about what would happen if the government shutdown continued and there was a lapse in funding was that "USDA would evaluate available options, seek legal determinations, and make a final decision about a course of action closer to that time."

[1] https://faq.usps.com/s/article/Where-is-my-package?_gl=1*1ustcfk*_gcl_aw*R0NMLjE2OTQxOTA2NjcuQ2p3S0NBandqT3VuQmhCNEVpd0E5NEpXC0gyR1otaGszX0IySGM0S3NMM2FoSkJNOGhoNnkteXQ0SGN0UThPTWZSOHl0UkV1SkVrajV4b0NNT0VRQXZEX0J3RQ..*_gcl_dc*R0NMLjE2OTQxOTA2NjcuQ2p3S0NBandqT3VuQmhCNEVpd0E5NEpXC0gyR1otaGszX0IySGM0S3NMM2FoSkJNOGhoNnkteXQ0SGN0UThPTWZSOHl0UkV1SkVrajV4b0NNT0VRQXZEX0J3RQ..*_gcl_au*MTk1MTI4NjM5NC4xNjk0MTkwMzY4*_ga*MTczOTkyNDkzOC4xNjk0MTkwMzY4*_ga_3NXP3C8S9V*MTY5NDI3NzYxNS4zLjAuMTY5NDI3NzYxNy4wLjAuMA..#AVAILABLE_FOR_PICK_UP

8.      The USDA stated in its "Supplemental Nutrition Assistance Program (SNAP) Lapse in Funding Questions from States – Part 5 October 11, 2013" that several states provide the next month's SNAP electronic issuance files as early as the 15th of the month. Attached to this declaration and marked as Exhibit 5 is a true and correct copy of that document.

9.      USDA also directed states to hold their benefit issuance files and delay normal transmission to their EBT vendors until further notice, to "preserve maximum flexibility . . . should the lapse in funding continue[.]" That statement was made in "Supplemental Nutrition Assistance Program (SNAP) Lapse in Funding Questions from States – Part 6 October 16, 2013. Attached to this declaration and marked as Exhibit 6 is a true and correct copy of that document.

10.     Since early August 2023, Proposed class counsel has been diligently investigating the specific claims in this case since it became apparent that Congress would not enact appropriations bills before the end of Federal Fiscal Year 2022-23, reinforced when members of Congress voiced opposition to a continuing resolution. Counsel have evaluated the legal issues relating to the SNAP program and the EBT issuance process, consulted hunger experts and food bank professionals and an economist.

11.     On September 11, 2023, I made the following attempts to contact the U.S. Attorney's office to request that the DOJ transmit the demand letter to OMB to the Director, and to notify the U.S. Attorney's office that Plaintiff's counsel was going to ask the court to set a TRO hearing Wednesday September 13, 2023:

        a.      At 1:07 p.m., I left a message at the main number for the Oakland U.S. Attorneys, (510)637-3680. No one returned my call.

        b.      At 1:09 p.m., I left a message at the main number for the San Francisco U.S. Attorneys, (415)436-7200. No one returned my call.

        c.      I went to the Oakland U.S. Attorneys' office just before 3:30.  The receipt desk was not staffed. There was a phone with a staff directory in the lobby. There were three civil attorneys listed.

        d.      At 3:28 p.m., I called Attorney Jevechius Bernardoni, 2-3721, but the voicemail for that attorney was not set up, and I could not leave a message.

**DECLARATION OF JODIE BERGER ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:23-cv-04678

e.       At 3:29, I called Attorney Andrew Mainardi, 2-3508, but received a message that the call could not be completed as the number was not in service.

f.       At 3:30, I called Attorney Emmet Ong, 2-3929 and left a voicemail message, but as of 5:40 p.m., had not received a response.

g.       At 3:32, I contacted Legal Assistant Kay Konopaske, 2-3745.  After explaining I needed to reach a civil attorney regarding a TRO hearing, she came to the reception desk.  Ms. Konopaske informed me that she was in the criminal division, but would try to locate someone in the civil division. I gave her my business card and a direct telephone number, and informed her a San Franciso civil attorney would be fine, if no one was available in Oakland.

h.       At 4:08, Shapna Mehta with the U.S. Attorney's office, contacted me.  I explained the nature of the suit, and provided answers to her other questions about the case, including the nature of the emergency necessitating our seeking a TRO. Ms. Mehta said someone would contact me the evening of September or on September 12, 2023.

i.       I arranged for a letter to be sent by Federal Express on September 11, 2023 to Secretary Vilsack and Director Young notifying them that counsel would be seeking a Temporary Restraining Order hearing on September 13, 2023. I emailed the letter to Secretary Vilsack and Undersecretary Dean the same day. A true and correct copy of that letter is attached as Exhibit 7.

j.       On September 12, 2023, Ms. Mehta with the U.S. Attorney's office recontacted me. She asked that I call her when the complaint in this case is filed. I called Ms. Mehta with the case number at 2:06 pm on September 12, 2023, and provided her with the case number. I informed Ms. Mehta that Plaintiffs were requesting a hearing on September 13, 2023, regarding Plaintiffs' Application for a TRO and Provisional Class Certification, and that I would inform the U.S. Attorney's office if a different date is set.  With the case number information, Ms. Mehta was going to attempt to locate the assigned U.S. Attorney, and would inform me of which attorney was assigned when she determined that information.

12.     As of the filing of this Motion, Defendants have not responded to any of Plaintiffs' communications.

**DECLARATION OF JODIE BERGER ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:23-cv-04678

1    I declare under penalty of perjury, under the laws of the United States and the State of

2  California, that the foregoing is true and correct.

3    Executed on the 12th day of September 2023, at Oakland, California.

4

5    By: _____
      Jodie Berger
6      WESTERN CENTER ON LAW AND
      POVERTY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JODIE BERGER ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO AND
OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:23-cv-04678

# EXHIBIT 1



www.wclp.org

August 30, 2023          **Sent electronically and by US mail**

Secretary of Agriculture Tom Vilsack
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250
AgSec@usda.gov

Deputy Undersecretary Stacy Dean
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250
stacy.dean@usda.gov

          Re: October 2023 issuances

Dear Secretary Vilsack and Undersecretary Dean:

As you know, limited time remains for Congress to enact appropriations bills for Fiscal Year 2023 in order to avoid a government shutdown.  Meanwhile, states must issue their master EBT files by mid-month to accommodate the lead time necessary to get all the individual household benefits loaded to their EBT cards in time for their regular issuance.

Given the uncertainty about the shutdown, it is critical that USDA provide states with the assurance that they may transmit the EBT files to the EBT vendors within their regular timeframe leading up to and throughout any government shutdown.

Such an assurance is consistent with USDA's obligation to pay benefits under section 5(a) of the Food and Nutrition Act (7 U.S.C. § 2014(a)). The Act provides, "Assistance under this program shall be furnished to all eligible households who make application for such participation."  This language is not conditional.

If the government shutdown comes to pass, funding for October and subsequent months' benefits may come from multiple sources. For example, since October's benefits are obligated with the transmission of the EBT files in mid-September, that obligation is incurred in the current Fiscal Year.  Sufficient funds exist in this year's appropriations to fund those benefits. In addition, contingency reserves of $6 billion are available to cover a large portion of benefits that cannot be obligated in the current fiscal year.

We therefore request that USDA confirm that it intends to issue guidance to states confirming that they should meet their  regular timeframe for timely issuance of SNAP benefits, or otherwise confirm that the October issuances may proceed without stopping or delaying their issuance.

**LOS ANGELES HEADQUARTERS**  3701 Wilshire Blvd, Suite 208, Los Angeles CA 90010  P 213.487.7211  F 213.487.0242
**SACRAMENTO**                1107 Ninth Street, Suite 700, Sacramento CA 95814  P 916.442.0753  F 916.442.7966
**OAKLAND**                   449 Fifteenth Street, Suite 301, Oakland CA 94612  P 213.487.7211  F 213.487.0242

October 2023 Issuances, p. 2
August 30, 2023

If we do not hear from the USDA by Friday September 8, 2023, we will inform impacted clients of their right to pursue legal action to enforce these obligations.

Sincerely,

Western Center on Law & Poverty
jberger@wclp.org

# EXHIBIT 2



www.wclp.org

September 7, 2023          **SENT VIA OVERNIGHT MAIL SERVICE**

Shalanda Young, Director
Office of Management and Budget
725 Seventeenth Street NW.
Washington, DC 20503

      Re: October 2023 SNAP issuances


Dear Director Young:

As you have stated publicly, limited time remains for Congress to enact appropriations bills for Fiscal Year 2024 in order to avoid a government shutdown.

Section 5(a) of the Food and Nutrition Act (7 U.S.C. § 2014(a)) requires USDA to issue Supplemental Nutrition Assistance Program (SNAP) food benefits. The Act provides, "Assistance under this program shall be furnished to all eligible households who make application for such participation." This language is not conditional.

Section 11(e)(2)(B) of the Food and Nutrition Act (7 U.S.C. § 2020(e)(2)(B)) requires the timely issuance of SNAP benefits to eligible households. Section 11(g) (7 U.S.C. § 2020(g)) requires USDA to ensure that states comply with these and other statutory requirements. States must begin the SNAP benefits issuance process by sending electronic files to the processing vendor by mid-September in order to timely issue October 2023 benefits.

Since October's benefits are obligated with the transmission of the electronic files in mid-September, that obligation is incurred in the current Fiscal Year. Sufficient funds exist in this year's appropriations to fund those benefits. In addition, contingency reserves of $6 billion are available to cover a large portion of benefits that cannot be obligated in the current fiscal year.

Given the uncertainty about the government shutdown, it is critical the Office of Management and Budget instruct USDA to obligate October 2023 benefits from the fiscal year 2023 appropriation.

We therefore request that the OMB confirm that it intends to provide those instructions to the USDA, or otherwise confirm that the October issuances may proceed.

If we do not hear from the OMB by close of business Friday September 11, 2023, we will inform impacted clients of their right to pursue legal action to enforce these obligations.


Sincerely,

Western Center on Law & Poverty
jberger@wclp.org


**LOS ANGELES HEADQUARTERS**  3701 Wilshire Blvd, Suite 208, Los Angeles CA 90010  P 213.487.7211  F 213.487.0242
**SACRAMENTO**                1107 Ninth Street, Suite 700, Sacramento CA 95814  P 916.442.0753  F 916.442.7966
**OAKLAND**                   449 Fifteenth Street, Suite 301, Oakland CA 94612  P 213.487.7211  F 213.487.0242

# EXHIBIT 3

CALIFORNIA HEALTH & HUMAN SERVICES AGENCY
# DEPARTMENT OF SOCIAL SERVICES
744 P Street • Sacramento, CA 95814 • www.cdss.ca.gov



**KIM JOHNSON**
DIRECTOR

**GAVIN NEWSOM**
GOVERNOR

August 31, 2023

Richard Rothschild, Director of Litigation
Western Center on Law & Poverty
3701 Wilshire Blvd, Suite 208
Los Angeles, CA 90010

SUBJECT:    IMPACT OF POTENTIAL SHUTDOWN OF FEDERAL GOVERNMENT ON
PROVISION OF CALFRESH BENEFITS

Dear Richard Rothschild:

The California Department of Social Services (CDSS) is in receipt of your letter, dated August 22, 2023, regarding the impact of the potential shutdown of the federal government on the provision of CalFresh benefits.

The CDSS is committed to mitigating risks to CalFresh households resulting from a federal government shutdown and is working with its state and federal partners to that end.

Please be advised that CDSS confirmed with California's Electronic Benefit Transfer (EBT) vendor, Fidelity Information Services, that the deadline for transmitting the EBT composite issuance files to issue October CalFresh benefits in September is September 15, 2023.

Sincerely,

*Alexis Garcia*

ALEXIS GARCIA,
Deputy Director
Family Engagement and Empowerment Division

# EXHIBIT 4

**Verification Requirements**

**Q. Several States have questioned their responsibilities in the processing of current applications in the absence of some normal verification sources (e.g., federal databases unavailable due to the lapse in funding). States wanted to know if they will be held harmless for any errors that might result.**

A. FNS recognizes that normal verification sources may have been interrupted as a result of the lapse. However, mandatory verification requirements still apply. In the event that electronic data sources are unavailable, the household has primary responsibility to provide documentation in accordance with FNS regulations at 7CFR 273.2. While FNS appreciates the additional burden this places on States, we also need to ensure program integrity and for this reason we expect States to meet the mandatory verification requirements as provided for in the regulations to the extent practicable.

**November**

**Q. (various and related) If a cardholder has benefits available that were issued prior to October 31, 2013, will they be able to spend those benefits on or after November 1? It was my understanding that any remaining, previously-issued benefits (issued on or before October 31) could continue to be spent on and after November 1 until they were used up. What happens to unspent benefits beyond the month of October? As you know some clients will still have benefits available on their EBT cards that may not be expended prior to the end of October... will these already issued benefits still be reimbursed to the vendor - or will the state be responsible for any unexpended issuance?**

A. Any benefits issued October 31, 2013 or earlier should not have their availability interrupted by a continuing lapse in funding. FNS will provide the reimbursement for these benefits as they are redeemed through the standard ASAP process.

**Q. In the event of a potential SNAP shut down for November, the following information needs to be received as soon as possible for contingency planning:**

   1. **Can November benefits be suspended, rather than closed? I recommend suspension because when the funds are appropriated, it will be easy to reinstate benefits and go forward. Closures would result in reapplications and no State would be able to handle the volume if that occurs.**

      A. We appreciate your question and recommendation, and understand that States are concerned about future operations if the funding is not made available for SNAP —

we share those concerns. The FNA and SNAP regulations provide broad discretion in determining whether suspension or cancellation is in the best interest of the program.  Given the automated environment of State eligibility systems and EBT, FNS believes that suspension would be appropriate in the event of a continued lapse.

**2.  If a State chooses, can the State fund the program costs (either administrative and benefit costs or both)?  If the answer is yes, will the State be reimbursed for the federal share of the costs spent?**

A.  FNS is hopeful that the current lapse in appropriations for SNAP will be resolved in time to permit normal, timely issuance of November benefits.  If benefits should be suspended due to the absence of funding, States may elect to continue issuance with State funds by working directly through their EBT contractors.  However, FNS's ability to subsequently reimburse States for any such issuance and the associated administrative expenses is unclear.  Significant legal and financial considerations would need to be addressed before any reimbursement could occur.  If a State were to undertake this course of action, it would need to do so at its own risk and with no assurance of Federal reimbursement.

**3.  Would States have the flexibility to fund partial benefits – like 50% until funds are restored?**

A.  Please see answer above (to question 2) which applies whether we are talking about full or partial benefits.

**4.  If a State does not furlough state employees and allows the employees to continue normal SNAP activities (applications, renewals, changes, etc.) but just not pay the benefits, is that allowed?**

A.  It is anticipated that once an appropriation is enacted, barring other Congressional action, normal FY 2014 SAE and other allowable reimbursements will be made available to the States.  Employees continuing normal SNAP activities would presumably be considered allowable reimbursements.

In accordance with 271.7 (e), Certifications of eligible households must continue during the lapse.  State agencies shall accept and process applications during a month(s) in which a reduction, suspension or cancellation is in effect in accordance with the requirements of part 273.  Continuing the process of certification and

recertification is also important to minimize impact of recovery once an appropriation is enacted.

5. **If a State does furlough employees, will on line applications be honored during the temporary closure even though benefit payment is delayed? Or will should the online application process be made unavailable also?**

A. Please see response to #4. This includes timely processing of paper and on-line applications.

6. **We have also been asked about the ability of EBT vendors to move on a dime: both to terminate benefits and reinstate benefits, as well as to redeem benefits already loaded from previous months. States are nervous that recipients will hoard October benefits and then not have access to them in November should benefits be terminated.**

   **One other state question: can a state continue to certify households, but not issue benefits until there is new money? If they do so, will they be penalized as being untimely if actually issuance happens after the expedited service period passes? One state is contemplating continuing certification in order to avoid a huge spike in certification activity if there is a delay.**

A. See response to #4. In circumstances where a reduction or suspension is in effect, as long as the determination of eligibility is made in compliance with 273.2, there would be no timeliness penalty. Continuing certification activities is necessary to the State's ability to meet program requirements once an appropriation is received. FNS also believes it is critical to maintaining program access and integrity.

7. **Could States leave cases alone, not suspend or terminate, but just not forward funds to the EBT contractor?**

A. We believe transfer of the issuance file may be what this question is getting at, as funds do not transfer until redemption at the retailer. In order to preserve the maximum flexibility as we consider possible options, should the lapse in funding continue beyond October 31st, we have directed states to hold their November issuance files and delay transmission to their EBT vendors until further notice.

Q. **As I read it - SNAP benefits to clients would be available through October and there are contingency funds available that would support State administrative expenditures**

**through October as well. However, if a shutdown were to last longer than October - there would be no funding for SNAP or SAE beyond October. Can I clarify that means issuance?**

A. We understand that States may be concerned about future operations and whether benefits will be paid and redeemed in November. Questions such as this are appreciated as we consider available options, and make a final decision about a course of action closer to that time. We appreciate your patience as we work to serve SNAP participants during this potential continuing lapse in funding.

**Q. While I think unexpended benefits shouldn't be affected at all because funding for SNAP benefits issued before the ARRA expiration date are already authorized, the generic answer FNS provided apparently raises the concerns among States. I appreciate it very much if you can help find a way to clarify?**

A. Any benefits issued October 31, 2013, or earlier should not have their availability interrupted by a continuing lapse in funding

**Q. Eric, I need a clarification on this Q & A. When I read it I thought it meant that people who still had benefits on their card after 10/31 could access them at the grocery store. My staff thinks it refers to those who get October and November benefits loaded in October but I'm not sure what the part "would be available for draw" means. Is this a reference to a fiscal matter which says that if the client spends the money in October, retailers will be reimbursed. Could you clarify? Two states asked whether benefits loaded onto cards by October 31 would be available for draw in November if there are no new benefits loaded for November.**

A. Program issuances made under 7CFR 273.2(g)(2) (sometimes referred to as combined allotments) which are both issued and made effective (i.e., available to the client) in October are proper obligations of October 2013. As such, they are provided for in currently available program funding.

**Q. Earlier question: QC is working to finish June reviews that would normally be due for transmission 10/23, and also reviews for subsequent months. We are having difficulty finishing some reviews that require verification of federal benefits. Will we have extra time to try to obtain this verification when the shutdown ends before transmission is required, or should we be making likely conclusions on those amounts, with a hold harmless period for federal re-reviews?**

A. **Once an appropriation is signed and when government operations resume, FNS will work with our SNAPQCS contractor to determine the most effective method to allow States to initiate adjustments regarding the transmission due dates.**

**So this is saying that the likely conclusion should not be used – the review should remain unfinished until the federal verification is available, correct?  And States will be held harmless for late transmissions correct?**

A.  Yes.

Q. **Earlier Question:  Do the rules at 271.7 (d), allotment reduction procedures, apply if November benefits are not authorized? Highlighted citation of note is:**
**§ 271.7   Allotment reduction procedures.**

**(d)**
**(2) Suspensions and cancellations. (i) If a decision is made to suspend or cancel the distribution of SNAP benefits in a given month, FNS shall notify State agencies of the date the suspension or cancellation is to take effect. In the event of a suspension or cancellation of benefits, the provision for the minimum benefit for households with one or two members only shall be disregarded and all households shall have their benefits suspended or cancelled. Upon receiving notification that an upcoming month's issuance is to be suspended or cancelled, State agencies shall take immediate action to effect the suspension or cancellation. This action would involve making necessary computer adjustments, and notifying issuance agents and personnel.**
**(ii) Upon being notified by FNS that a suspension of benefits is over, State agencies shall act immediately to resume issuing benefits to certified households and shall resume benefit issuance as soon as practicable.**
**(4) Notification of eligible households. Reductions, suspensions and cancellations of allotments shall be considered to be Federal adjustments to allotments. As such, State agencies shall notify households of reductions, suspensions and cancellations of allotments in accordance with the notice provisions of § 273.12(e)(1), except that State agencies shall not provide notices of adverse action to households affected by reductions, suspensions or cancellations of allotments.**
**The suspension and cancellation of benefits contemplated under 7 CFR 271.7  appear to apply during a period when the Act and the program are in force but a reduction, suspension or cancellation of benefits becomes necessary because cost will exceed appropriation.  However, the Act has not been extended either by continuing resolution or passage of a Farm Bill.   In other words, on what basis would either federal statute or regulation remain in force without any continuing resolution or Farm Bill authorizing**

**extension of the program?**

**A.  The question assumes that the FNA is not operative; however, the FNA doesn't require extension other than its authorization for appropriation.  The FNA continues to be fully in force.**

**Additional question:  The answer is incomplete.  I agree the FNA remains intact but that still doesn't answer the question regarding if the requirements of 271.7 will be in effect?  They basically state benefits must be suspended or cancelled if a decision is made to suspend or cancel the distribution, which will be the case if funds are not appropriated.   I find a couple of problems with the regulation – it is:**

**It does not appear to allow benefits to be paid retroactively when funds are once again available – just that States must begin resuming issuances to certified households.  So if the shut down is not resolved in November, a State would not be able to pay November's issuance in December, correct?  Also it states issuing benefits to certified households so it would appear that States must continue to take applications during the shutdown and authorized eligibility but not payment of benefits so the applicants are considered certified households,**

A.  This provision establishes that while the client is not entitled to the restoration of the lost benefit, FNS shall direct State agencies <u>to provide affected households with restored benefits</u> unless the Secretary determines that the appropriation is insufficient.

# EXHIBIT 5

**November**

**Q.  Is it possible for a State to step in to cover the cost of SNAP benefits once SNAP funding runs out at the end of the month? Is there any precedent for a State taking over the federal government's costs for the program? Has FNS issued any guidance on how a state would be able to do so (including technical questions of loading the benefits on EBT cards). Have any State agencies reached out to FNS on this question?**

A.  FNS is hopeful that the current lapse in appropriations for SNAP will be resolved in time to permit normal, timely issuance of November benefits.  If November benefits should be suspended due to the absence of funding, States may elect to continue issuance with State funds by working directly through their EBT contractors.  However, FNS's ability to subsequently reimburse States for any such issuance and the associated administrative expenses is unclear.  Significant legal and financial considerations would need to be addressed before any reimbursement could occur.  If a State were to undertake this course of action, it would need to do so at its own risk and with no assurance of Federal reimbursement.

**Q.  If a state were to provide a week's cash benefit to help the neediest food stamp recipients pay for food in November, for the reason that logistically making a State issued food stamp payment through EBT is too complicated, then would that cash benefit be FNS reimbursable when government opens up again and retroactive payments to states are authorized?**

A.  FNS is hopeful that the current lapse in appropriations for SNAP will be resolved in time to permit normal timely issuance of November benefits.  SNAP is a food benefit and is provided with limitations associated with the purchase of eligible foods.  If a State issued a cash benefit to help SNAP participants pay for food in November, this would be done at the State's option and decision; there is no vehicle, barring specific Congressional action, that would provide for Federal reimbursement of a cash benefit.

**Q.  Vermont is considering using state funds to pay the 3SquaresVT benefit to our Cash Out recipients. They would like to know if it is OK to pay just those folks, about 17,000, and not pay the rest of our 3SquaresVT beneficiaries. If it is OK to do this can we get a reimbursement from FNS to cover this expense once the shutdown has been resolved?**

A.  Vermont would need to discuss the legal implications to the State for providing funds to some SNAP recipients and not others with their own general counsel.  If Vermont were to undertake this course of action, it would do so at its own risk and with no assurance of Federal reimbursement.

**Q. The following question was raised outside of State inquiries, but FNS thought it would be of interest to States:  As Vice Chair for the State Forum of the Electronic Government Payments Council, I have been asked to send something out to the states regarding the Next Generation Conference in November 2013.  We are hoping that we can tell them something positive so that people will continue to plan to attend.  Any suggestions you have would be helpful.**

A. Without a FY 2014 appropriation, FNS is unable to provide state exchange funds for conference attendance. When a full FY 2014 appropriation becomes available, barring Congressional action, FNS would hope to reimburse 1 SNAP attendee per State, as we have in the past.

**Q. Several States have indicated that their governments are starting to look at the possibility of furloughs for staff who have federal funding attached to their salaries. What advice do you have for States considering furloughs of staff with federal funding attached to their salaries?**

A. It is anticipated that once an appropriation is enacted, barring other Congressional action, normal FY 2014 SAE and other allowable reimbursements will be made available to the States. Employees continuing normal SNAP activities would presumably be considered allowable reimbursements. FNS expects States to continue to conduct eligibility and issuance processes, integrity, oversight and system maintenance in order to ensure that benefits will reach those in need.

**Q. Would we be required to provide some sort of adverse action notice for November benefits? We would prefer to send a letter or communication as opposed to a system generated notice if needed or required. However, a mailing would certainly not be without a substantial cost to the State.**

A. States should handle the noticing as mass changes, which may be publicized via news media, posters in certification offices, issuance locations, or other sites frequented by certified households, or general notices mailed to households. Many States choose to go beyond the minimum requirements and issue notices directly to households in order to minimize confusion and provide good customer service; however, this is not subject to the 10 day notice requirements. For those States sending a separate notice, they may want to consider delaying the release of the notification until there is more certainty regarding November funding in order to avoid client confusion.

**Q. If there is no legislation signed and November benefits are not issued, will that be considered a mass change?**

A. Yes.

**Q. Bottom line is that not knowing how to proceed for November monthly benefits is not the bigger issue as we can make that call very late and not affect timely issuance (October 30). The much greater concern is not knowing how to handle daily expedited files. Should we assume based on the guidance yesterday that we should continue processing those daily files all the way through the end of October as well even though they obligate funding into November?**

A. Yes. While an expedited issuance in the latter half of October will reflect a pro-rata share of the October allotment and the full November allotment, it is considered an October issuance.

# EXHIBIT 6



WESTERN CENTER
ON LAW & POVERTY

www.wclp.org

September 11, 2023          **SENT VIA OVERNIGHT MAIL SERVICE**
                           **Sent by email to USDA**

Shalanda Young, Director
Office of Management and Budget
725 Seventeenth Street NW.
Washington, DC 20503

Secretary of Agriculture Tom Vilsack
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250
AgSec@usda.gov

Deputy Undersecretary Stacy Dean
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250
stacy.dean@usda.gov

       **Re: October 2023 SNAP issuances**

Dear Director Young, Secretary Vilsack, and Undersecretary Dean:

Following up on our letters to Director Young dated September 7, 2023, and Secretary Vilsack and Undersecretary Dean dated August 30, 2023, we write to inform you that we anticipate filing a nationwide class action in the Northern District of California to protect SNAP recipients' right to timely receipt of benefits.  California must start the EBT master issuance file transmission by September 15, 2023, causing the need for emergency protection of the status quo.

We hereby provide you with notice that we will be asking the court to schedule a hearing on Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Ex Parte Application for Provisional Class Certification on September 13, 2023.  We will be given the exact time and date after filing and will update you via all available methods of communication.

I attempted to give the US Attorney's office in Oakland advance notice of our intent to request a hearing earlier today, but could not reach anyone.

If Director Young can apportion funds obligated in September for the October issuances, or otherwise confirm that October proceed, and if Secretary Vilsack can instruct states to proceed with their normal EBT issuance master file transmittal to their vendors, please contact me immediately at (510) 207-8396 or by email at jberger@wclp.org.

Sincerely,

*Jodie B.*

Western Center on Law & Poverty
jberger@wclp.org

**LOS ANGELES HEADQUARTERS** 3701 Wilshire Blvd, Suite 208, Los Angeles CA 90010  P 213.487.7211  F 213.487.0242
**SACRAMENTO** 1107 Ninth Street, Suite 700, Sacramento CA 95814  P 916.442.0753  F 916.442.7966
**OAKLAND** 449 Fifteenth Street, Suite 301, Oakland CA 94612  P 213.487.7211  F 213.487.0242